NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| COOPER HOSIERY MILLS, INC., | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 07-CV-1939 (DMC) |
| HONEYWELL INTERNATIONAL, INC., | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Plaintiff Cooper Hosiery Mills, Inc. ("Plaintiff") to amend its Complaint. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Plaintiff's motion to amend is **denied**.

## I.  BACKGROUND[1]

On December 14, 1995, Plaintiff purchased a GNS-XLS Flight Management System ("FMS") from Honeywell International, Inc. ("Defendant") for its private jet airplane (the "Sale"). Plaintiff claims that Defendant made misrepresentations in connection with the Sale. The Complaint, however, fails to identify which purported misleading statements Defendant made to Plaintiff before the Sale.

---

[1] The facts set forth in this Opinion are taken from the undisputed facts set forth in the Parties' FED. R. CIV. P. 56.1 statements in their respective moving papers.

According to the Complaint, Plaintiff's FMS contained a Global Positioning System ("GPS") receiver that provided flight navigation capabilities for Plaintiff's aircraft. The FMS also offered additional features, including control over the plane's navigation sensors, computer-based flight planning and fuel management. Plaintiff alleges that, when it purchased the FMS in 1995, it was "common knowledge in the aviation industry" that the Federal Aviation Administration ("FAA") was in the process of developing a new – and more accurate – GPS navigation system. The FAA, however, did not release the system until July 10, 2003 – nearly eight years after Plaintiff purchased the FMS – when the FAA activated the Wide Area Augmentation System ("WAAS"). The FAA did not begin to approve GPS upgrades and units for use with the WAAS until several years after the WAAS's activation in 2003.

Plaintiff challenges some of the representations made in one of Defendant's product brochures regarding the FMS's prospective capabilities and upgrades, including: "'And as the benefits of GPS become even more clearly defined, the GNS-XLS will continue to provide even more capability.'" "'Since we are likely to see further GPS enhancements or applications approved in the next few years by aviation authorities worldwide, it is good to know that the modular GNS-XLS was designed to anticipate improvements in GPS precision.'" "'[The FMS's] growth potential is virtually unlimited, and it can accommodate new features without encroaching on your valuable panel and pedestal real estate. As more capabilities come on line, your system can be continually upgraded.'"

While the Complaint acknowledges that the WAAS would not be developed and activated for many years, Plaintiff alleges that Defendant's representations were "designed so that the purchaser would reasonably conclude that the [FMS] would be capable of being upgraded for use with the WAAS." Ignoring the eight- to ten-year gap, the Complaint alleges that the representations "induce[d] Plaintiff and others to believe that the GNS-XLS [FMS] would be compatible with the [WAAS]." Plaintiff, however, does not claim that these alleged misrepresentations caused Plaintiff to purchase the FMS in 1995. The Complaint contains no representation made by Defendant at the time of the 1995 sale that made any specific reference to the WAAS; it fails to allege that Plaintiff ever read or heard any of these alleged misrepresentations when it purchased the FMS in 1995; it fails to allege that the offending product brochures played any role in Plaintiff's decision to purchase the FMS; and it fails to identify which of Defendant's product brochures contained these alleged misrepresentations.

In September 2006, eleven years after Plaintiff purchased the FMS, Defendant sent a notice to FMS owners noting that "[d]ue to hardware limitations, the [FMS] will be ineligible for upgrade to WAAS functionality." (Complaint ¶ 34.) Plaintiff does not allege that its FMS is defective or functioned improperly, but rather Plaintiff alleges that the FMS is not ungradable to the WAAS functionality.

## II.    DISCUSSION

Plaintiff's motion to amend is denied because it is procedurally defective and too late. In order to obtain relief from this Court's judgment and file a motion to amend, Plaintiff was required to first satisfy the standards of the applicable Federal Rules of Civil Procedure, under which a judgment will be set aside only upon a showing of one of a very limited group of reasons. Plaintiff failed to satisfy these standards.

Plaintiff cannot rely on the standard in FED. R. CIV. P. 15(a) *after* the Court has dismissed its Complaint. Rather, after a court has disposed of an action, a plaintiff seeking to amend its complaint must first "move to alter or amend the [court's] judgment within ten days after its entry under Rule 59(e) or, if the motion is made after that ten day period has expired, it must be made under the provisions in Rule 60(b) for relief from a judgment or order." 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1489 (2d ed. 2007); see also Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("After judgment dismissing the complaint is entered, a party may seek to amend the complaint (and thereby disturb the judgment) only through FED. R. CIV. P. 59(e) and 60(b)."). The plaintiff must be required to do so because

> [t]o hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation. Furthermore, the draftsmen of the rules included Rules 59(e) and 60(b) specifically to provide a mechanism for those situations in which relief must be granted after judgment and the broad amendment policy of Rule 15(a) should not be construed in a manner that would render those provisions meaningless.

Id.  Here, Plaintiff failed to file a proper motion under FED. R. CIV. P. 59(e) or FED. R. CIV. P.

4

60(b), much less satisfied the rigorous standards applicable to such motions.[2] And this Court's L. Civ. R. 7.1(i) requires that even timely motions for reconsideration must identify a "matter or [the] controlling decisions which the party believes the Judge . . . has overlooked." L. Civ. R. 7.1(i); Adamson v. Ortho-McNeil Pharm., Inc., No. 06-866, 2007 U.S. Dist. LEXIS 11660, *5-7 (Feb. 20, 2007 D.N.J. 2007). Plaintiff, however, failed to do so and Plaintiff's proposed First Amended Complaint is devoid of anything it could not have pled when it first filed this action.

Plaintiff's delay alone is itself sufficient for this Court to deny Plaintiff's motion to amend. See U.S. Labor Party v. Oremus, 619 F.2d 683 (7th Cir. 1980). In Oremus, after the court dismissed the plaintiff's complaint for failure to state a claim, the plaintiff sought postjudgment leave to amend its complaint to add two new factual allegations. See 619 F.2d at 692. The court denied the plaintiff's motion to amend and, on appeal, the United States Court of Appeals for the Seventh Circuit affirmed. The Seventh Circuit held that, even under Fed. R. Civ. P. 15(a)'s more liberal amendment policy, "[d]elay in presenting a post-judgment amendment when the moving party had an opportunity to present the amendment earlier is a valid reason for a district court not to permit an amendment." Id.; see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). In Oremus, the court found "no explanation for the [plaintiff's] delay in not raising the new [amendment] prior to the entry of judgment." 619 F.2d at 692; see also Burlington, 114 F.3d at 1435. Such is the case here. Plaintiff is, after all, represented by no less

---

[2] Under Fed. R. Civ. P. 59(e), Plaintiff would have had to demonstrate "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). Under Rule 60(b)'s equally demanding standard, Plaintiff would have had to show that the Court's judgment should be set aside for one of the six limited reasons specified in the rule. See Fed. R. Civ. P. 60(b).

than four lawyers from three different law firms that were perfectly capable of proper pre-complaint investigation. See id. at 1435.

### III.    CONCLUSION

For the reasons stated, it is the finding of this Court that Plaintiff's motion to amend is **denied**. An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

| | |
|---|---|
| Date: | April  16 , 2008 |
| Orig.: | Clerk |
| cc: | All Counsel of Record |
| | Hon. Claire C. Cecchi, U.S.M.J. |
| | File |